**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**RONALD L. JOHNSON,**

      **Petitioner,**

**v.**                                  **Civil Action No.: 3:23-CV-247
(GROH)**

**WARDEN BROWN,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On December 13, 2023, the Petitioner, an inmate who was then incarcerated at Gilmer Federal Correctional Institution,[1] acting *pro se*, filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the calculation of his sentence by the Bureau of Prisons ("BOP"). ECF No. 1 at 1.[2] The Petitioner filed an amended petition on December 28, 2023, which also challenged his sentence calculation. ECF No. 5 at 1, 5–7. On February 21, 2024, the Petitioner paid the filing fee. ECF No. 14.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B)

---

[1] According to the Bureau of Prisons' Inmate Locator page, the Petitioner is currently located at San Antonio RRM, a Residential Reentry Management field office in San Antonio, Texas. https://www.bop.gov/inmateloc/. The Petitioner has not updated his address with the Clerk.

[2] All ECF numbers cited herein are from the instant case, 3:23-CV-247, unless otherwise noted.

and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be dismissed without prejudice.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Underlying Criminal History in the Eastern District of Wisconsin[3]

On March 24, 2009, a federal grand jury returned a three-count indictment (the "2009 action") charging the Petitioner with possession of cocaine base with intent to distribute, possession of MDMA (Ecstasy) with intent to distribute, and possession of a firearm by a convicted felon. E.D. Wisc. 2:09-CR-83, ECF No. 1. On June 10, 2010, the 2009 case was dismissed without prejudice.

On June 22, 2010, the Petitioner was charged in a three-count indictment (the "2010 action") returned in the Eastern District of Wisconsin, case number 2:10-CR-121, with: (1) in Count 1, possession of cocaine base, a Schedule II controlled substance, with intent to distribute; (2) in Count 2, possession of MDMA (Ecstasy), a Schedule I controlled substance, with intent to distribute,; and (3) in Count 3, possession of a firearm by a convicted felon. ECF No. 1. The Petitioner was convicted by a jury of Counts 1 and 3 on January 4, 2011. ECF Nos. 37, 39. On July 21, 2011,[4] the Petitioner was sentenced to 300 months as to Count One (1) and 120 months as to Count Three (3), with those terms to run concurrently with one another. ECF Nos. 60, 64 at 2, 76. The Judgment stated that, "[t]his sentence shall run concurrent to the sentence the defendant is currently serving in Will County, Illinois, Circuit Court Case Nos. 03CF1756 and 06CF2274." Id. The

---

[3]  All ECF numbers cited in Section II.A. herein are from the Eastern District of Wisconsin, case number 1:10-CR-121, unless otherwise noted.

[4] Sentence was imposed in open court on July 21, 2011, however, the Judgment was not entered until July 22, 2011. ECF Nos. 60, 64, 76.

sentencing court further recommended that, "[t]he initial term of the defendant's federal sentence be served concurrently in the Illinois facility where he is currently serving his State sentence until the completion of his State sentence." Id.

The Petitioner appealed his conviction and sentence, to the Seventh Circuit, which affirmed both the conviction and sentence on May 24, 2012. United States v. Johnson, 680 F.3d 966, 970 (7th Cir. 2012), overruled on other grounds by Fowler v. Butts, 829 F.3d 788 (7th Cir. 2016).

An amended judgment was entered pursuant to the First Step Act on April 12, 2023, which sentenced the Petitioner to "210 months on count one and 120 months on count three running concurrently with each other and concurrently with the sentences in Will County, Illinois, Circuit Court Case Nos. 03CF1756 and 06CF2274." ECF No. 120 at 2. See N.D. W.Va. 3:23-CV-247, ECF No. 18-2 at 27.

### B.    Petitioner's State and Federal Custody in Wisconsin

On January 29, 2009, following the execution of a search warrant, the Petitioner was arrested by state authorities in Milwaukee County, Wisconsin, for drug and weapons felony offenses. ECF No. 18-3 at 1, ¶ 4. See E.D. Wis. 2:13-CV-1304[5], ECF No. 29 at 7–8. Although arrested by state law enforcement officers, the Petitioner was charged by a federal grand jury on March 24, 2009, in the 2009 action. See U.S. v. Johnson, 680 F.3d at 971.

Following his 2009 federal indictment, on April 23, 2009, the Petitioner was turned over to state authorities in Will County, Illinois, based on a detainer issued by the Will

---

[5] This case was a habeas corpus action filed by the Petitioner under 28 U.S.C. § 2255. The case was filed on November 18, 2013, and dismissed on November 9, 2015. See E.D. Wisc. 2:13-CV-1304, ECF No. 29.

County, Illinois, court for Unlawful Delivery of a Controlled Substance in case number 03-CR-1756, and Aggravated Battery in case number 06-CF-2274. ECF No. 18-3 at 1, ¶ 5. The Petitioner was convicted of the Illinois state charges, and on June 28, 2010, was sentenced to an aggregate eight-year term of imprisonment. ECF No. 18-3 at 1–2, ¶ 7. The Petitioner received credit in Illinois state court for slightly more than fifteen (15) months of credit for time served from March 17, 2009, through June 28, 2010. ECF Nos. 18-2 at 4[6], 18-3 at 1 – 2, ¶ 7.

While the Petitioner was in the custody of Illinois authorities, on June 22, 2010, he was indicted by a federal grand jury in the 2010 action. ECF No. 18-3 at 1, ¶ 6. See E.D. Wis. 2:10-CR-121, ECF No. 1.

On September 14, 2020, the Petitioner was transferred into the custody of the United States Marshal Service ("USMS") pursuant to a Writ of Habeas Corpus Ad Prosequendum for his pending federal case in the Eastern District of Wisconsin, 10-F-121. ECF No. 18-3 at 2, ¶ 8. The Petitioner proceeded to trial in his 2010 case and was convicted by a jury of Possession with Intent to Distribute Fifty (50) Grams or More of Cocaine Base, as charged in Count One (1) of the indictment, and Being a Felon in Possession of a Firearm, as charged in Count Three (3) of the indictment, and was convicted on January 4, 2011. E.D. Wis. 10-CR-121, ECF Nos. 37, 39. On July 21, 2011, the Petitioner was sentenced to a three hundred (300) month term of imprisonment, which was later reduced to a 210-month term. ECF No. 18-2 at ¶¶ 9, 14. On January 3, 2013, the Petitioner completed his eight-year Illinois term, and primary jurisdiction was

---

[6] The Will County, Illinois, judgment also shows that the Petitioner received time credits for the period from November 17, 2003, through January 12, 2004, however, the Petitioner has not claimed that time period should also be credited toward his federal sentence in his 2010 case. ECF No. 18-2 at 4.

relinquished to the USMS on the same day. ECF No. 18-3 at ¶ 12. Upon sentence computation by the BOP, the Petitioner was granted prior custody credit from the date of his arrest, January 29, 2009, until June 27, 2010, the day before the imposition of his state sentence.[7] ECF Nos. 18-2 at 36, 18-3 at 2, ¶ 14.

###        C.        Claims in the Petition

The petition raises a sole ground for relief, that the BOP, specifically the Designation and Sentence Computation Center ("DSCC"), improperly calculated his sentence, when it refused to give him concurrent credit towards his federal sentence for time spent in primary state custody. ECF No. 5 at 5–7. The Petitioner argues that he is now serving more time than the sentence imposed based on the refusal "to apply jail credits to Petitioner's sentence or give him a Barden review…so his jail time would officially run concurrent like the Federal Sentencing Judge ordered." ECF No. 5 at 5. Further, the Petitioner contends that the BOP's refusal to grant him concurrency of his state and federal sentences violates the judgment imposed in case number 2:10-CR-121 in the Eastern District of Wisconsin, which directed that the Petitioner's federal sentence be served concurrently[8] with his Will County, Illinois, State sentences in case numbers 03CF1756 and 06CF2274. ECF No. 5 at 5–7. However, the Petitioner contends that he

---

[7] Regardless of the arguments made by the Petitioner, the exhibits submitted by the Respondent, appear to show that the Petitioner may have received some concurrent time prior to the imposition of his federal sentence. According to the Federal Bureau of Prisons Public Information Inmate Data sheet dated February 29, 2024, the Petitioner received jail credit from January 29, 2009, through June 27, 2010. ECF Nos. 18-2, 18-3 at 2, ¶ 14. According to the Will County, Illinois, Judgment – Sentence to Illinois Department of Corrections, the Petitioner also received credit for time served from March 17, 2009, through June 28, 2010. ECF No. 18-2 at 4.

[8] Both the original Judgment and Amended Judgment in the Eastern District of Wisconsin direct that the Petitioner's federal sentence shall be served concurrently with his Illinois state sentences.

has been incarcerated since January 29, 2009, and has already served more than the sentence imposed upon him. Id. at 7.

The Petitioner asserts that he exhausted his administrative remedies when he filed a BP-8 which was denied, and a BP-9 from which he never received a response. ECF No. 5 at 9. He further asserts that he filed another request for relief with the DSCC. Id. The Petitioner states that he did not file a BP-10 because the DSCC denied his request, and to continue the grievance process would result in the Petitioner continuing to serve a longer sentence than was imposed. Id. at 10.

For relief, the Petitioner asks for the Court to "order the B.O.P. to correct his time or the court to amend judg[ment] and take jail credits off the top, adjust sentence from 210 to 198 [months] to account for [his] jail credits." Id. at 10.

### D.    Respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

Following the February 22, 2024, issuance of an Order to Show Cause [ECF No. 15], the Respondent filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, with a memorandum and exhibits in support thereof on March 20, 2024. ECF No. 18, 18-1 through 18-3. Therein, the Respondent argues that the Petitioner is not entitled to relief because (1) he failed to exhaust his administrative remedies prior to filing his habeas corpus petition, and (2) the Petitioner's sentence was computed in accordance with federal law and includes all credit permissible under law. ECF Nos. 18 at 3.

The Respondent argues that the petition should be dismissed on procedural grounds, because the Petitioner failed to properly exhaust his administrative remedies. ECF No. 18-1 at 6–7. Specifically, the Respondent contends that the "Petitioner's administrative remedy history reveals he has filed or attempted to file six administrative

remedies while incarcerated with the BOP, including two at FCI Gilmer." Id.  However, the Respondent states that the Petitioner's "first attempt to file an administrative remedy relating to his sentence computation was filed at the regional level on January 29, 2024, which was over a month after the filing of this Petition," and his "second remedy filed in relation to his sentence computation was filed at the institutional level on March 1, 2024." Id.

The Respondent concludes that the Petitioner did not attempt to file any administrative remedies prior to filing this action. However, according to the Respondent, the Petitioner's ability to file both a regional and an institutional remedy after the filing of this petition for habeas corpus, "shows he had access to the forms required to exhaust, and he was not prevented from exhausting his administrative remedies by anything other than his own disregard for the established procedures." Id. at 7.

As to the merits of the petition, the Respondent asserts that the Petitioner's current two hundred and ten (210)[9] month federal sentence from the Eastern District of Wisconsin commenced on July 21, 2011, the date it was imposed. ECF No. 18-1 at 3. Further, the Petitioner had time he spent in custody applied from January 29, 2009, through June 27, 2010, resulting in a Good Conduct Time Release date of February 11, 2025. Id. at 3. Additionally, the Respondent contends that the Petitioner's prior aggregate eight (8) year sentence from the Will County Circuit Court, Illinois [Case Nos. 03CF-1756 and 06CF-2274] commenced on June 28, 2010, and was satisfied on January 3, 2013. ECF Nos. 18-1 at 8–9, 18-3 at 2, ¶12. The Respondent asserts that it "is clear a federal sentence

---

[9] On April 12, 2023, the Petitioner received a First Step Act sentence reduction in the Eastern District of Wisconsin Case Number 10-CR-121, reducing the term to 210 months. ECF No. 18-3 ¶13.

commences, at its earliest, on the day the prisoner is sentenced in federal court." ECF No. 18-1 at 8. Accordingly, the Respondent contends that because a federal sentence cannot commence prior to the date of its imposition, a federal sentence cannot be a retroactive concurrent sentence, or a sentence which is "backdated." Id. at 9.

The Respondent argues that the BOP correctly calculated the Petitioner's sentence, including all allowable credit. ECF No. 18-1 at 9. Further, the Respondent asserts that the BOP, not the courts, determines the date a defendant's sentence commences and whether the defendant should receive credit for any time spent in custody. Id. According to the Respondent, the Petitioner's sentence in the Eastern District of Wisconsin properly commenced on July 21, 2011, the date the sentence was imposed. Id. at 3, 7–9. Because the Petitioner's current sentence was imposed on July 21, 2011, and based on 18 U.S.C. § 3585(a)–(b) and BOP Program Statement 5880.28, the Respondent argues "that [a]ny contention that Petitioner's federal sentence commenced earlier is without merit." Id. at 7. Further, the Respondent's exhibits show that the Petitioner received credit towards his federal sentence from January 29, 2009, through June 27, 2010. ECF No. 18-2 at 36.

### E. Petitioner's Response to the Motion to Dismiss or for Summary Judgment

On April 5, 2024, the Petitioner filed a response styled, "Motion to Reply To Respondent's Motion to Dismiss." ECF No. 20. Therein, the Petitioner contends that during "the sentencing phase" of his Eastern District of Wisconsin charges, his "lawyer asked District Judge, since his federal time would run concurrent with his state sentence, could he. . . be returned to the state prison where he was currently serving his sentence." Id. at 3. The Petitioner argues that the judge in his Eastern District of Wisconsin case

8

intended that his sentence in that district "run concurrent with his state sentence," and thus, his federal sentence imposed should have been ordered to be served entirely concurrent with his state sentence. Id. at 7. Further, the Petitioner mentions that "someone did, in fact, designate the state prison where Petitioner served his state sentence as a place of confinement for his federal sentence." Id. According to the Petitioner, "DSCC, and the Respondent. . . fails to acknowledge statute 18 U.S.C. 3021(b) and the Bureau's wide discretion under that statute, as well as BOP's Program statement 5160.03." Id. at 5. Further, the Petitioner's response states that "he failed to [exhaust] the administrative remedy process. But Petitioner felt it would be futile and further push petitioner past his outdate if he could obtain relief, and a proper calculation of his custody credits." Id.

### F.    Respondent's Reply

The Respondent filed a reply on April 9, 2024, which asserts that the Petitioner's federal cases cannot run concurrently with one another because his 300-month sentence imposed in the Eastern District of Wisconsin was not imposed until over a year after his 72-month state sentence was already imposed in Will County, Illinois. ECF No. 18-1 at 8. The Respondent contends that the Petitioner received all jail credit to which he was entitled, and which was applied to his Illinois state sentence. Further, that sentence was satisfied prior to the date on which the Petitioner commenced his sentence in the Eastern District of Wisconsin, and thus, he is not entitled to have that time applied to his federal sentence. Id. at 2. Finally, the Respondent argues that the Petitioner concedes that he failed to exhaust the Administrative Remedy Program prior to filing the instant habeas petition. ECF No. 18-1 at 6.

### III.    STANDARD OF REVIEW

### A.    Pro Se Litigants

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in <u>Neitzke</u> recognized that:

> Section 1915(d)[10] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless." <u>Id.</u>

---

[10] The version of 28 U.S.C. § 1915(d) which was effective when <u>Neitzke</u> was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, 404 U.S. at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417–8 (7th Cir.1993).

### B.    Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

A petition filed pursuant to § 2241 is the appropriate method for a prisoner to challenge the fact and length of his confinement, but generally not the conditions of that confinement. Preiser v. Rodriguez, 411 U.S. 475, 498 – 499 (1973). "[I]mmediate release or speedier release from [ ] confinement [is] the heart of habeas corpus." Id. at 498.

### C.    Exhaustion of Administrative Remedies

The Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq.,[11] addresses the Bureau's Administrative Remedy Program, and directs inmates on the processes necessary to exhaust their administrative remedies by filing four mandatory[12]

---

[11] See https://www.bop.gov/policy/progstat/1330_018.pdf.

[12] Inmates who are incarcerated in Community Corrections Centers (CCCs) are not required to attempt informal resolution. BOP PS 1330.18 § 542.13.b.

remedies: (1) an informal resolution (BP-8)[13]; (2) an administrative remedy at the facility (BP-9); (3) an appeal to the regional office (BP-10); and (4) a final appeal to the central office (BP-11). Failure to complete all four mandatory remedies is fatal to a claim based on the inmate's failure to exhaust administrative remedies.

The Fourth Circuit recognizes the process that inmates must follow to exhaust administrative remedies:

> The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15 (2009). First, an inmate normally must present his complaint informally to prison staff using a BP–8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison Warden using a BP–9 form. The BP–8 and BP–9 forms are linked. Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP–10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP–11 form. *Id.*

Hill v. Haynes, 380 F. App'x 268, 269, n.1 (4th Cir. 2010).

---

[13] Many BOP institutional handbooks refer to the Informal Resolution Form as the BP-8 form. See:

1. FCI Waseca https://www.bop.gov/locations/institutions/was/was_ao_handbook_eng_031517.pdf;
2. FCI Oxford https://www.bop.gov/locations/institutions/oxf/OXF_aohandbook.pdf;
3. FPC Schuylkill https://www.bop.gov/locations/institutions/sch/SCH_camp_aohandbook.pdf;
4. USMC Springfield https://www.bop.gov/locations/institutions/spg/spg_ao_handbook050917.pdf;
5. USP Lewisburg https://www.bop.gov/locations/institutions/lew/LEW_smu_aohandbook.pdf;
6. FDC Tallahassee https://www.bop.gov/locations/institutions/tal/TAL_fdc_aohandbook.pdf;
7. FCI Fort Dix https://www.bop.gov/locations/institutions/ftd/FTD_aohandbook.pdf; and
8. USP/SCP McCreary https://www.bop.gov/locations/institutions/mcr/MCR_aohandbook.pdf.

### D.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45–46.

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Twombly, 550 U.S. at 555. Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

 "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a

legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E.    Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." <u>Anderson</u>, 477 U.S. at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  <u>Id.</u>  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, <u>supra</u>, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, 475 U.S. at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, 475 U.S. at 587–88. Anderson, 477 U.S. at 248–49.

## IV.    ANALYSIS

### A.    The Petitioner Failed to Exhaust his Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and prejudice." McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir. 2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)). Exhaustion, as provided in § 1997e(a), is mandatory, regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524.

Pursuant to <u>McClung</u>, the Petitioner must demonstrate cause and prejudice to excuse his failure to exhaust. However, the exhibits submitted by the Respondent from the BOP show that the Petitioner failed to fully exhaust his claims by properly submitting the required administrative remedies and receiving a final determination upon the merits. ECF No. 18-2. Rather, of the Petitioner's six administrative remedies, two were filed at the institutional and regional level relating to this matter. <u>Id.</u> at 40. The first of those was filed at the regional level on January 29, 2024, over a month after this suit was filed on December 28, 2023.[14] ECF Nos. 18-2 at 40, 18-3 at ¶15. Further, the Petitioner filed the second of those remedies at the institutional level on March 1, 2024. ECF No. 18-2 at 40. According to the documents submitted by the Respondent, that remedy is still under review. <u>Id</u>.

However, in his April 5, 2024, response the Petitioner acknowledges that he failed to exhaust the administrative remedy process.[15] ECF No. 20 at 4. He explained, "Petitioner went on to file petition under 2241 because it was obviously futile to continue the administrative remedy process." <u>Id.</u> The Petitioner asserts that if he pursued administrative remedies he would be prejudiced. Further, in his response to the Respondent's Motion to Dismiss or for Summary Judgment, the Petitioner argued that he filed this § 2241 petition "because it was obviously futile to continue the administrative remedy process." ECF No. 20 at 3–4. The Petitioner contended that to pursue the administrative remedy process would take several months past his projected release

---

[14] That regional remedy was rejected on January 30, 2024.

[15] In his April 5, 2024, Response, the Petitioner asserts that he refiled his BP-8 and BP-9 administrative remedies after filing suit herein, subsequently received denials for both, and on March 15, 2024, filed an appeal with the Regional Director. ECF No. 20 at 10. This time frame tacitly acknowledges that the Petitioner did not obtain a rejection from the Central Office before filing his petition for habeas corpus relief.

date. Id. at 4. Moreover, the Petitioner contends that he presented the facts in his petition to the prison's internal grievance forum, by filing a BP-8 which was denied. ECF No. 20 at 3. The Petitioner claims that he next filed a BP-9, but did not receive a response after two and a half months. Id. at 3–4.  The Petitioner argues that he then filed "a BP-10 which was rejected because Petitioner needed a response to BP-9," and filed "a request to the Designation and Sentence Computation Center for a nunc pro tunc which was denied." Id. The Petitioner concluded that he did not exhaust his administrative remedies because he "felt it would be futile and further push petitioner past his [release date] if he could obtain relief and a proper calculation of his custody credits." Id. at 5.

The Petitioner did not assert in either his amended petition [ECF No. 5], or his response [ECF No. 20], that he requested but was denied administrative remedy forms for filing BP-11 an administrative remedy, which is required to exhaust pursuant to 28 C.F.R. § 542.13–.15 and BOP Program Statement 1330.18 § 542.10 et seq. As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his

> administrative remedies, the standard we adopt excuses this
> failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

Accordingly, it appears that the Petitioner failed to exhaust all administrative remedies available to address his sentence computation prior to filing the instant action, or at any time thereafter. Although such a failure to exhaust may be excused for cause and prejudice, the Petitioner has not demonstrated either cause or prejudice. Rather he contends that the process would be futile without further explanation of any cause or prejudice. However, it is plain that the Petitioner: (1) does not claim he was denied access to remedy forms or that staff failed or refused to submit those forms; (2) filed only two administrative remedies about this matter, both of which were filed after this action was filed; (3) failed to exhaust through the Central Office before filing suit; (4) tacitly conceded in his response [ECF No. 20] that he has not filed a BP-11 with the Central Office.

Moreover, the exhibits submitted by the Respondent show that the Petitioner failed to submit an administrative remedy claim with the Central Office before instituting this action. The Petitioner submitted his administrative remedies to the Regional Office on January 29, 2024, and then to the institution on March 1, 2024. However, nothing reflects that any form was filed with at the institutional, Regional, or Central Office for consideration *prior* to filing suit.

Therefore, the undersigned finds that the Petitioner failed to exhaust his administrative remedies. Subsequent to filing this petition, the Petitioner demonstrated his ability to file both a regional and institutional remedy in relation to this matter, showing that he had access to the forms required to exhaust and was not prevented by any BOP official or employee from exhausting those remedies. It is clear that the Petitioner is not

entitled to relief because he failed to complete the administrative remedy process on the merits **before** filing this Petition. ECF No. 20 at 3–4, 10.

The Petitioner claims that completing the procedural requirements of the Administrative Remedy Program would be futile because it would "further push petitioner past his [release date]." Id. at 5. However, it is worth noting that the BOP inmate locator page shows that the Petitioner has already been transferred to pre-release custody at the San Antonio Residential Reentry Management center. Moreover, other courts in this District have rejected similar arguments, and found that the exhaustion requirement may not be excused "because [Petitioner's] sentence will have ended before he could complete the remedy process. . . Exhaustion is not waived simply because a habeas petitioner believes that the length of the administrative process would preclude him from receiving full relief." Garza v. Bayless, Civil Action No. No. 5:22-CV-314, 2023 WL 3485984, at *2 (N.D.W. Va. Apr. 27, 2023), report and recommendation adopted, No. 5:22-CV-314, 2023 WL 3485259 (N.D.W. Va. May 16, 2023).

For all of these reasons, the undersigned finds that no cause or prejudice exists to excuse the Petitioner's failure to exhaust to exhaust his administrative remedies prior to filing this action. Because the Petitioner failed to exhaust, this court is without jurisdiction to consider the merits of the petition. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

**B.      The Petitioner's Sentence was Properly Calculated by the Bureau of Prisons.**

Even if the Petitioner's claims were considered on the merits, he is still not entitled to relief under § 2241. The Petitioner contends that he is entitled to receive concurrent credit toward his federal sentence imposed in the Eastern District of Wisconsin, based on the time served on a state sentence in Will County, Illinois. ECF No. 5 at 5–6. However, the Respondent counters that the Bureau of Prisons has properly calculated the Petitioner's credits because the state sentence commenced before the federal sentence was imposed on July 21, 2011, and a concurrent federal sentence cannot be retroactive from the date of imposition. ECF No. 18-1 at 7–8. The Respondent's position is supported by the facts and the law.

In United States v. Wilson, 503 U.S. 329, 333, 112 S. Ct. 1351, 1354 (1992), the Supreme Court expressly rejected Wilson's argument that § 3585(b) authorizes a district court to award credit at sentencing, reasoning that:

> Section 3585 indicates that a defendant may receive credit against a sentence that "*was imposed*." It also specifies that the amount of the credit depends on the time that the defendant "*has spent*" in official detention "prior to the date the sentence commences." Congress' use of a verb tense is significant in construing statutes. By using these verbs in the past and present perfect tenses, Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing.

503 U.S. at 333 (emphasis in original, internal citations omitted). The Wilson Court further held that:

> After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence. . . . Because the offender has a right to certain jail-time credit under § 3585(b), and because

> the district court cannot determine the amount of the credit at
> sentencing, the Attorney General has no choice but to make
> the determination as an administrative matter when
> imprisoning the defendant.

503 U.S. at 334–35, 112 S. Ct. at 1354–55. Further, <u>Wilson</u> recognized that, "[f]ederal regulations [28 CFR §§ 542.10–542.16 (1990)] have afforded prisoners administrative review of the computation of their credits and prisoners have been able to seek judicial review of these computations after exhausting their administrative remedies." 503 U.S. at 335, 112 S. Ct. at 1355 (cleaned up).

Accordingly, based on the clear holding of <u>Wilson</u>, the Attorney General is responsible for sentence computation, which includes the determination of when the sentence commenced and the amount of credit for time served following a federal conviction and sentencing. 503 U.S. at 333. In making this computation, the BOP must adhere to 18 U.S.C. § 3585 which provides as follows:

> (a) Commencement of sentence.—A sentence to a term of
> imprisonment commences on the date the defendant is
> received in custody awaiting transportation to, or arrives
> voluntarily to commence service of sentence, at the official
> detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.—A defendant shall be given credit
> toward the service of a term of imprisonment for any time he
> has spent in official detention prior to the date the sentence
> commences—
>
> > (1) as a result of the offense for which the defendant was
> > arrested; or
> >
> > (2) as a result of any other charge for which the defendant
> > was arrested after the commission of the offense for which
> > the sentence was imposed;
>
> that has not been credited against another sentence.

It is well established that a federal sentence cannot commence prior to the date of imposition, even when ordered to run concurrently with a previously imposed sentence. The Fourth Circuit has recognized that:

> A federal sentence does not begin to run, however, when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum*. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.

United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998) (citing Thomas v. Whalen, 962 F.2d 358, 361 n. 3 (4th Cir.1992); and Thomas v. Brewer, 923 F.2d 1361, 1366–67 (9th Cir. 1991) (producing state prisoner under writ of habeas corpus *ad prosequendum* does not relinquish state custody)).

When the Petitioner was arrested in Milwaukee, Wisconsin on January 29, 2009, by Wisconsin state law enforcement for the acts which eventually formed the basis of the federal 2009 charges, he began to earn credit towards his federal sentence. ECF No. 18-3 at 1, ¶ 4. He was subsequently indicted in federal court on March 24, 2009, which charges were dismissed without prejudice on June 10, 2010. He was turned over to Illinois state authorities to face Illinois state charges on April 23, 2009, based on a detainer. Id. at ¶ 5. The Petitioner was then convicted of the Illinois state charges, and on June 28, 2010, was sentenced to an eight-year term of imprisonment. Id. at ¶ 7.

After being indicted in federal court on June 22, 2010, the Petitioner was found guilty of drug and firearm charges on January 4, 2011. The Petitioner's federal sentence was imposed on July 21, 2011. At that time the Petitioner was serving his state sentence, and was only in temporary custody of the U.S. Marshals Service pursuant to a Writ of

Habeas Corpus Ad Prosequendum. ECF No. 18-3 at 2, ¶ 8. Further, although the Petitioner was in the temporary custody of United States Marshals by way of a federal Habeas Corpus Ad Prosequendum, during that period of temporary custody he remained in the primary custody of the state of Illinois. Importantly, the Petitioner did not receive prior custody credit from June 28, 2010, the date his state sentence was imposed, until the imposition of his federal sentence on July 21, 2011, because that time was solely applied to the Petitioner's state sentence. However, starting on July 21, 2011, when he was sentenced in federal court, the Petitioner received concurrent credit for his state and federal time.

Additionally, upon federal sentence computation by the BOP, the Petitioner was granted prior custody credit from the date of his arrest in Wisconsin, January 29, 2009, until June 27, 2010, the day before the imposition of sentence in his Illinois state sentence. Id. at 2, ¶ 14. Based upon the judgment entered by the District Judge, the BOP calculated the Petitioner's sentence to have commenced on the date he was sentenced in federal court, which going forward was to run concurrently with his credit toward his Illinois state sentence. Accordingly, the Petitioner began to receive concurrency of his state and federal sentences on the date his federal sentence was imposed, July 21, 2011, but also received federal credit for the period from January 29, 2009, through June 27, 2010, because that period of time was not also credited toward his other state or federal sentences.[16]

After the imposition of his federal sentence, the Petitioner was returned to state custody on August 9, 2011. However, consistent with the concurrency order of the federal

---

[16] See footnote 7.

sentencing judge, the Designation and Sentence Computation Center of the BOP designated the Illinois Department of Corrections for the service of the Petitioner's federal sentence. ECF Nos. 18-1 at 3, 18-2 at 22, 18-3 at 2, ¶¶ 10, 11.

The Petitioner's service of his state sentence in Illinois prior to the imposition of his concurrent federal sentence prohibited him from receiving simultaneous credit for that time spend in state custody, consistent with 18 U.S.C. § 3585(b) which directs that, a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." The Petitioner did not receive credit toward his federal term of imprisonment for the time he spent in Illinois detention prior to the date his federal sentence was imposed. The BOP properly calculated that  the period from the imposition of his state sentence until the imposition of his federal sentence could not be served concurrently—even if so ordered.[17]

Although the Petitioner asserts that the Bureau of Prisons incorrectly calculated his sentence, and refuses to grant him credit for time served in state custody, it is clear from 18 U.S.C. §§ 3585, 3621 and 3632 and the holding of <u>Wilson</u>, that neither the warden nor the Court calculate sentences for federal inmates. That task is the exclusive responsibility of the Bureau of Prisons, and pursuant to the holding of <u>Wilson</u>, this Court may not usurp the Bureau of Prisons' authority. Moreover, a review of § 3585 shows that the Petitioner's sentence was properly calculated to commence on the date he was

---

[17] The Petitioner's claim that the sentencing was intended to be a retroactive concurrent sentence or "backdated" the commencement of the federal sentence to the date of imposition of the Will County sentence is misguided. The federal sentence cannot commence prior to the date of imposition even if so ordered; it would be contrary to the law. <u>See</u> Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984).

sentenced in federal court, and which was ordered to be served concurrently with the Illinois state sentence.

Further, notwithstanding the provision of § 3585 which mandates a defendant shall receive credit toward the service of a term "that has not been credited against another sentence," the Petitioner was given concurrency for the time he served in state custody starting on the date his federal sentence was imposed, July 21, 2011. However, the Petitioner was not eligible to obtain credit for time served *prior* to commencement of his federal sentence, because he was receiving credit for that time toward his state sentence. Accordingly, the BOP, appropriately determined the date that Petitioner started his sentence was the date his sentence was imposed in federal court, consistent with the provisions of 18 U.S.C. §§ 3585(b). Thus, the Petitioner has received all custody credit to which he was entitled, and his request for relief is without merit.

For all the above reasons, the undersigned finds that even if the Petitioner's claims were considered on the merits, he fails to demonstrate he is entitled to relief.

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 5] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITHOUT PREJUDICE**.

It is further **RECOMMENDED** that Respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [ECF No. 18] be **GRANTED**.

The Petitioner shall have **fourteen (14) days** from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which**

**objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his current address as noted in the Bureau of Prisons' Inmate Locator page: RRM San Antonio, Residential Reentry Office, 727 East Cesar E. Chavez Blvd., Suite B-138, San Antonio, Texas 78206.

DATED:     September 13, 2024

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE